PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BAILEY BROADBENT PALSA, *et al*., | ) | |
| | ) | CASE NO. 5:11cv839 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| AMERICAN MEDICAL & LIFE | ) | |
| INSURANCE CO., | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Regarding ECF Nos. 94; 95; 96; |
| Defendant. | ) | 97; 98; 103] |

(5:11cv839)

# Table of Contents

I. Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

    A. Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B. Undisputed Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

        1. Palsa. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

        2. The Weilers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        3. Scheonrock. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

        4. Tritola.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        5. Berger. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    C. Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II. Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. Breach of Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

        1. The Pre-existing Condition Limitation or "Exclusion".. . . . . . . . . . . . . . . . . .10

            a. Whether the Exclusion Violates HIPAA. . . . . . . . . . . . . . . . . . . . . . . . .11

            b. Whether AMLI's Denial of Benefits Under the Exclusion Constitutes a Breach. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            c. Whether AMLI Erroneously Applied the Exclusion to Plaintiffs. . . . .15

                i. Scheonrock. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                ii. Tritola. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

                iii. Berger. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        2. Late Payments to Palsa, Tritola and the Weilers. . . . . . . . . . . . . . . . . . . . . . . 17

        3. Other Non-Payments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            a. Tritola. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            b. Palsa. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B. Bad Faith. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        1. The Exclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

        2. Payments to Hospitals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

            a. Whether Jett's Affidavit Conflicts With Earlier Deposition Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

            b. Palsa. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

                i. March 2010 UB-04 Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

                ii. August and October 2010 UB-04 Forms. . . . . . . . . . . . . . . . 31

            c. Tritola.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

            d. Whether AMLI Acted in Bad Faith When it Waited For Reimbursement From the Hospitals Before Paying Palsa and Tritola. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

        3. Late Payments to the Weilers.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

        4. Alleged Underpayment of Tritola's Claims.. . . . . . . . . . . . . . . . . . . . . . . . . . .36

    C. Declaratory Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

IV. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

(5:11cv839)

This matter is before the Court upon the cross Motions for Summary Judgment or Partial

Summary Judgment filed by Plaintiffs Bailey Broadbent Palsa, Lee Ann Scheonrock, Joseph

Tritola, Kevin Weiler, Sr., Jennifer Weiler, Colleen Weiler, Jacqueline Weiler, and Melanie

Berger (collectively "Plaintiffs"); and Defendant American Medical & Life Insurance Company

("AMLI").  ECF Nos. 94; 95; 96; 97; 98; 103.[1]  The parties responded (ECF Nos. 112; 113; 114)

and replied (ECF Nos. 115; 118; 119; 120).

## I.  Background

### A.  Parties

Plaintiffs all suffer from cystic fibrosis, an inherited chronic, terminal disease that affects

the lungs and digestive system.  ECF No. 47 at 2.  Plaintiffs regularly undergo lengthy in-patient

treatments at hospitals related to cystic fibrosis.  ECF No. 47 at 3.  Because their physical

conditions result in frequent lengthy hospitalizations that limit their ability to be fully employed,

Plaintiffs became interested in hospital indemnity insurance programs that would provide cash

payments for some of the time period that they were hospitalized.  ECF No. 47 at 3.  Hospital

indemnity insurance programs pay cash benefits directly to the insured for triggered events—

such as being admitted to the hospital— and are frequently offered to members of national

organizations in exchange for a premium.  ECF No. 47 at 3-4.

AMLI issued Group Accident and Sickness Hospital Indemnity Insurance Policies to the

National Congress of Employers ("NCE") and the National American Consumer Alliance

---

[1]  The parties filed their motions and supporting briefs under seal and also filed redacted
versions and revised redacted versions, resulting in six total motions for summary judgment.  The
Court refers to the un-redacted sealed motions in the balance of the opinion.

3

(5:11cv839)

("NACA") (collectively "AMLI Policies" or "policies").  ECF No. 95 at 8.  Plaintiffs became

members of NCE and/or NACA and purchased AMLI Policies.  ECF Nos. 47 at 4; 96 at 8, 11.

### B.  Undisputed Facts

The AMLI Policies' Certificate of Coverage provides that the benefit specifications for a

covered person, or insured, are contained in a Certificate Schedule that is issued to the insured.

ECF No. 85 at 2, ¶5.  The Certificates state that when an insured provides "proof of loss" with

his or her claim, AMLI will pay $1,000 per day that the insured is confined to the hospital, up to

30 days per policy year.  ECF Nos. 95 at 8; 96 at 8, 12; 85-4 at 13.  In addition, the Certificates of

Coverage contain a "Pre-Existing Condition Limitation" or "Exclusion," that states that there is

no coverage for an insured's pre-existing condition for a continuous period of twelve months

following the insured's effective date of coverage under the AMLI Policies.  ECF Nos. 95 at 8;

96 at 12.

AMLI denied payment of certain claims submitted by Plaintiffs, delayed payment on

some claims, and initially paid certain claims to the hospitals rather than to Plaintiffs directly.

ECF No. 85.  Plaintiffs allege these actions by AMLI constitute breach of contract and bad faith.

ECF No. 96 at  28, 35.  A brief outline of each Plaintiff and the attendant hospitalization claims

follows.[2]

### 1.  Palsa

Palsa was hospitalized from March 15, 2010 to April 2, 2010 and August 10, 2010 to

_____

[2]  A more detailed description of Plaintiffs' claims is set out in the analysis portion of the
opinion, *infra*.

4

(5:11cv839)

September 1, 2010. ECF No. 85 at 4, ¶16. She properly submitted and AMLI properly received proof of loss for her claims. ECF No. 85 at 4, ¶¶18, 20. AMLI paid Palsa's hospital for her claims. ECF No. 85 at 4, ¶¶19, 21. Palsa thereafter commenced the instant action against AMLI, on March 25, 2011, alleging payment was wrongfully made to her hospital rather than being paid to her directly. ECF No. 1-1 at 7. On or about August 24, 2011, after agreeing to mediation, AMLI paid Palsa the benefits owed her for the previously submitted claims plus interest. ECF No. 85 at 5, ¶¶28, 29. The payments represented $18,000 in hospital-indemnity benefits and $426.08 in interest for the March-April claim, and $12,000 in hospital-indemnity benefits for the August-September 2010 claim. ECF No. 85 at 5, ¶¶29, 30.

Palsa was admitted to the emergency room from October 9, 2010 to October 10, 2010. ECF No. 85 at 4, ¶17. During her visit, Palsa's physician performed an x-ray. ECF No. 85 at 4, ¶17. On or about February 9, 2011, AMLI paid Palsa's hospital for her x-ray. ECF No. 85 at 5, ¶24. AMLI has not paid any benefits to Palsa or the hospital for her ER visit. ECF No. 85 at 6, ¶31.

### 2. The Weilers[3]

Jacqueline Weiler was hospitalized from November 17, 2010 to December 4, 2010. ECF No. 85 at 6, ¶37. In or around January or February 2011, Kevin Weiler properly submitted to

---

[3] Kevin and Jennifer Weiler are members of NCE; Jacqueline and Colleen Weiler are their daughters. ECF Nos. 85 at 6-7, ¶¶34, 35, 40; 96 at 7. Plaintiffs, in the Amended Complaint and their opening motion brief, identify Jennifer Weiler as "J. Weiler"; however, in the Stipulation of Facts Plaintiffs identify Jacqueline Weiler as "J. Weiler." *See* ECF Nos. 47 at 2; 96 at 1; 85 at 1. Despite this confusion, the record reflects that the hospitalizations claims submitted were on behalf of Jacqueline Weiler.

(5:11cv839)

AMLI and AMLI received proof of loss for Jacqueline Weiler's hospitalization.  ECF No. 85 at 6, ¶38.  On or about August 15, 2011, AMLI paid $18,153.62 to Kevin Weiler with respect to Jacqueline Weiler's hospitalization.  ECF No. 85 at 6, ¶39.  AMLI's August 15, 2011 payment to Kevin Weiler represented $17,000.00 in hospital-indemnity benefits and $1,153.62 in interest for Jacqueline Weiler's hospitalization.  ECF No. 85 at 6, ¶39.

Colleen Weiler was hospitalized from December 10, 2010 to January 5, 2011.  ECF No. 85 at 7, ¶42.  In or around February or March 2011, she properly submitted to AMLI and AMLI received proof of loss for her hospitalization.  ECF No. 85 at 7, ¶43.  On or about August 15, 2011, AMLI paid $27,474.52 to Colleen Weiler for her hospitalization.  ECF No. 85 at 7, ¶44.  AMLI's August 15, 2011 payment to Colleen Weiler represented $26,000.00 in hospital-indemnity benefits and $1,474.52 in interest for her hospitalization.  ECF No. 85 at 7, ¶44.

### 3. Scheonrock

Lee Ann Scheonrock was hospitalized from March 23, 2010 to April 18, 2010; and November 4, 2010 to January 8, 2011.  ECF No. 85 at 7, ¶48.  She properly submitted to AMLI and AMLI received proof of loss for her March-April 2010 hospitalization.  ECF No. 85 at 8, ¶49.  AMLI has not paid benefits for these claims.  ECF No. 85 at 8, ¶53.

Lee Ann Scheonrock was hospitalized from October 10, 2011 to November 6, 2011.  ECF No. 85 at 8, ¶51.  Following communication from counsel for Lee Ann Scheonrock, on or about April 3, 2012, AMLI paid $27,000.00 to Scott Scheonrock with respect to Lee Ann

6

(5:11cv839)

Scheonrock's October 10, 2011 to November 6, 2011 hospitalization claim.[4]  ECF No. 85 at 8-9,

¶¶54, 56, 57.

### 4. Tritola

Tritola was hospitalized from: 1) December 9, 2009 to December 31, 2009; 2) April 5,

2010 to April 25, 2010; 3) January 18, 2011 to February 15, 2011; 4) April 22, 2011 to May 25,

2011; 5) June 28, 2011 to July 21, 2011; 6) August 26, 2011 to September 20, 2011; 7)

November 1, 2011 to November 30, 2011; and 8) December 1, 2011 to December 6, 2011.  ECF

No. 85 at 9-10, ¶¶62, 63, 64.

Tritola properly submitted to AMLI and AMLI properly received proof of loss for his

hospitalization claims of December 2009; April 2010; April-May 2011; August-September 2011;

and November-December 2011.  ECF No. 85 at 10-11, ¶¶65, 67, 71, 75, 77.  On or about March

27, 2012, AMLI paid $5,000.00 to Tritola for his hospitalization claim from December 1, 2011 to

December 6, 2011 only.  ECF No. 85 at 10-11, ¶¶66; 68, 72, 76, 78, 79.

Additionally, in or around April 2011, Tritola properly submitted and AMLI properly

received proof of loss for the January-February 2011 claims.  ECF No. 85 at 10, ¶77.  On or

about April 26, 2011, AMLI paid Tritola's hospital with respect to these claims.  ECF No. 85 at

10, ¶80.

In or around August 2011, Tritola properly submitted and AMLI properly received proof

---

[4]  Scott Scheonrock is a member of NCE; Lee Ann Scheonrock is his wife.  ECF No. 85 at 7, ¶¶45, 46.  Both became "covered persons" under the NCE Certificate of Coverage.  ECF No. 85 at 7, ¶47.  Scott Scheonrock is not a party in the instant case.

(5:11cv839)

of loss for the June-July 2011 claims.  ECF No. 85 at 11, ¶73.  On or about September 15, 2011, AMLI paid Tritola's hospital with respect to these claims.  ECF No. 85 at 11, ¶74.

After having initially paid the hospital, on or about January 7, 2013, AMLI paid $36,362.50 to Tritola for his January-February 2011 hospitalization claim.  ECF No. 85 at 11, ¶80.  AMLI's payment to Tritola represented $28,000.00 in hospital-indemnity benefits under the NCE Policy and $8,362.50 in interest.  ECF No. 85 at 11, ¶80.  Additionally, on or about January 7, 2013, AMLI paid $2,457.64 to Tritola for his June-July 2011 hospitalization claim.  ECF No. 85 at 12, ¶81.  AMLI's payment to Tritola represented $2,000.00 in hospital-indemnity benefits for under the NCE Policy and $457.64 in interest.  ECF No. 85 at 12, ¶81.

### 5. Berger

Berger was hospitalized from March 10, 2011 to April 22, 2011; September 4, 2011 to September 16, 2011; October 6, 2011 to October 26, 2011; and November 29, 2011 to December 7, 2011.  ECF No. 85 at 12, ¶84.  The parties dispute if or when Berger may have originally submitted her claims, but the parties agree that on or about March 2, 2012, Berger's counsel provided AMLI's counsel with "various documents indicating that Berger was hospitalized" during the above dates.  ECF No. 85 at 12, ¶85.  AMLI has not paid benefits to Berger or her hospital for these claims.  ECF No. 85 at 12, ¶86.

### C. Claims

Plaintiffs bring claims of breach of contract and bad faith, alleging that AMLI failed to pay benefits owed to Plaintiffs under their respective policies.  ECF No. 47 at 23-25.  Plaintiffs also seek declaratory judgment setting forth the respective rights and obligations of the parties

(5:11cv839)

under the policies.  ECF No. 47 at 24-25.

AMLI moves for summary judgment on Plaintiffs' breach of contract claims.  ECF No. 95.  Plaintiffs move for partial summary judgment on its breach of contract and bad faith claims as to liability, and moves for declaratory judgment.  ECF No. 96 at 36.

## II.  Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).  A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322-23.

## III.  Analysis

### A.  Breach of Contract

Plaintiffs allege that AMLI breached the policy provisions in refusing payment or making late payments.[5]  ECF No. 96 at 28-29.  AMLI argues that Plaintiffs either failed to perform their

---

[5]  Late payments include benefits initially paid to the hospital, as with Palsa and Tritola, and benefits that were paid directly to the insured, as with the Weilers.

(5:11cv839)

own obligations under the contracts; they cannot demonstrate that AMLI has breached the contracts; and/or by virtue of AMLI having paid all of the benefits to which Plaintiffs are entitled under the policies with interest, Plaintiffs cannot demonstrate that they have been damaged.  ECF No. 95 at 20.

"To establish a breach of contract, a plaintiff must show that a contract existed, the plaintiff performed, the defendant breached, and the plaintiff suffered damages." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio Ct. App. 2004)).  Plaintiffs' breach of contract claims can be divided into three categories: 1) the pre-existing condition limitation or "Exclusion"; 2) late payments; and 3) other non-payments.[6]

### 1. The Pre-existing Condition Limitation or "Exclusion"

Plaintiffs argue that AMLI's refusal to pay claims of Tritola, Berger and Scheonrock because of the Exclusion constitutes a breach of contract.  ECF No. 96 at 30.  Plaintiffs assert that the Exclusion is unlawful in that it violates the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and that even if the Exclusion were lawful, it should be interpreted in favor of Plaintiffs in order to result in coverage.  ECF Nos. 96 at 33, 34.

The AMLI Policy Exclusion states,

---

[6]  Plaintiffs, in opposition to AMLI's motion, assert that "AMLI anticipatorily repudiated the NCE Policy by its treatment of Palsa's" claims and Scheonrock's claims.  ECF No. 112 at 6, 18.  AMLI responds that, regardless of how Plaintiffs "couch" their claims, AMLI properly paid or denied Palsa's and Scheonrock's claims.  ECF No. 120 at 7, 14.  Because Plaintiffs do not articulate an explanation for its anticipatory repudiation argument, the Court does not consider Plaintiffs' purported anticipatory repudiation argument.

(5:11cv839)

> There is no coverage for a pre-existing condition for a continuous period of 12
> months following the effective date of coverage under this Policy.
> . . .
> In determining whether a pre-existing condition limitation applies, [AMLI] will
> credit the time the Covered Person was previously covered under creditable
> coverage, if the previous creditable coverage terminated less than 63-days prior to
> the effective date of the Covered Person's coverage under the Policy.

ECF Nos. 85-2 at 12-13; 85-4 at 11.  AMLI states that it has not paid outstanding hospitalization

claims of Tritola, Berger and Scheonrock because their credible coverage was not terminated 63

days prior to the effective date of their AMLI Policy, as required by the Exclusion.  ECF Nos. 95

at 32-33; 114 at 10, 15.

### a.  Whether the Exclusion Violates HIPAA

Plaintiffs allege that federal law expressly provides that an individual need not terminate

his or her creditable coverage for it to count as credit against an exclusion.  They cite 45 C.F.R.

§§ 146.113, 146.111 in support of their argument.  ECF No. 96 at 32-33.  Plaintiffs argue that

because AMLI's Exclusion requires that the creditable coverage must have been terminated to

count as credit, the Exclusion is unlawful.  ECF No. 96 at 33.  AMLI contends that the provisions

of Federal Regulations upon which Plaintiffs rely apply to group health plans, and that because

the AMLI Policies are individual health insurance plans, Plaintiffs' cited regulations do not apply

to the AMLI Policies.  ECF No. 114 at 11.

45 C.F.R. §§ 144.101 sets forth the basis and purpose of the requirements relating to

health care access: (a) Part 146 applies to group health plans and group health insurance issuers;

(b) Part 147 applies to both group health plans and individual health insurance issuers; (c) Part

148 applies to individual health insurance.  It is undisputed that the AMLI Policies are part of the

11

(5:11cv839)

individual market.  ECF Nos. 96 at 10; 114 at 11.  As such, they are governed by 45 C.F.R. §§ 147, 148.  Although Plaintiffs take great care in explaining how Part 146 expressly provides that an individual need not terminate his or her creditable coverage for it to count against a pre-existing condition limitation, they do not sufficiently explain how this applies to the policies at issue, which are individual policies governed by Parts 147 ant 148.  ECF No. 96 at 31-34.

Plaintiffs argue that because § 144.103, which contains definitions, states that "creditable coverage has the meaning given the term in 45 CFR § 146.113(a)," and that § 146.113(a)(1) defines creditable coverage to mean coverage of an individual under multiple types of insurance, including a group health plan, then the provisions in Part 146 apply to the provisions in Part 148. ECF No. 96 at 32-33.  This argument is without merit.  The definition of creditable coverage in § 146.113 clarifies what type of coverage may be considered "creditable" under Parts 146, 147 and 148.  It does not add or override other provisions.  Notably, Part 147 applies to both group and individual insurance, and if the Department of Health and Human Services had intended the provisions of Part 146 to apply to the individual market, it could have expressly stated so in Part 147.  See Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 452 (2002) (instructing that when particular language is included in one section but omitted from another section of the same act, courts presume the inclusion or exclusion was intentional and purposeful); Henry Ford Health Sys. v. Shalala, 233 F.3d 907, 910 (6th Cir. 2000) (reiterating that courts should "read statutes and regulations with an eye to their straightforward and commonsense meanings."). [7]

---

[7]  45 C.F.R. § 148.120(a)(2) states that an issuer may not impose a preexisting condition exclusion upon an eligible individual who requests coverage.  "Eligible individual" is defined in § 148.103 as being an individual not eligible for coverage under certain insurance plans and who

(5:11cv839)

Plaintiffs' additional argument that the Exclusion is unlawful because AMLI did not

understand the regulations when it drafted the policies is also without merit.  ECF Nos. 96 at 31-

32; 115 at 5-7.  The subjective and allegedly erroneous belief of AMLI as to the requirements for

individual market insurance does not itself render the terms of its policies unlawful.

### b.  Whether AMLI's Denial of Benefits Under the Exclusion Constituted a Breach

Plaintiffs argue that AMLI breached the Exclusion because the term "creditable

coverage" is not defined in the policies; the term has a "commercial or technical meaning;" and

therefore the definition of "creditable coverage" in Part 146 causes the Exclusion to be governed

by Part 146 under theories of contract interpretation.  ECF No. 96 at 31.   The Court disagrees.

To the extent "creditable coverage" as a commercial or technical term may be defined by Part

146, the defining feature of Part 146 does not render the Exclusion governable by Part 146, as

urged by Plaintiffs.

In *Safeco Ins. Co. of Am. v. White*, 913 N.E.2d 426, 430-431 (Ohio 2009), the Ohio

Supreme Court set forth the applicable rules for courts considering insurance contracts,

> As we stated in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 21, 2003-Ohio-5849, 797 N.E.2d 1256, our task when interpreting an insurance policy is to "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy."  *Id.* at ¶ 11, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus.  Moreover, "[w]e look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the

---

does not have other health insurance.  §§ 144.103; 148.103(3),(4).  AMLI contends, and Plaintiffs do not dispute, that certain Plaintiffs had other health insurance at the time they became a covered person under the AMLI Polices.  ECF No. 120 at 13.  These Plaintiffs are, therefore, not "eligible individuals," and, thus, the Exclusion is not unlawfully applied to them.

(5:11cv839)

contents of the policy." *Id*., citing *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus.

We further stated in *Galatis* that "where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." *Id*. at ¶ 13, citing *Cent. Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 16 O.O.3d 441, 406 N.E.2d 515.  Because the insurer, not the insured, typically drafts the language in an insurance policy, "an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured." *Id*., citing *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.

The plain language of the Exclusion states that previous coverage had to have been terminated less than 63 days prior to the effective date of the AMLI coverage to count as creditable coverage.  ECF No. 85-2 at 12-13 ("[i]n determining whether a pre-existing condition limitation applies, [AMLI] will credit the time the Covered Person was previously covered under creditable coverage, if the previous creditable coverage terminated less than 63-days prior to the effective date of the Covered Person's coverage under the Policy.").  Because there is no ambiguity in the Exclusion, and no other meaning is apparent from the content of the policies, there is nothing in the Exclusion for the Court to interpret.

Furthermore, the Court looks to the plain language in the contract to establish the intent of the parties— extrinsic evidence in the form of AMLI's allegedly erroneous understanding of pertinent regulations when drafting the policy terms and AMLI's marketing materials may not be considered by the Court to establish intent, as Plaintiffs urge (ECF No. 112 at 8-9).  *See Savedoff v. Access Group*, 524 F.3d 754, 763 (6th Cir. 2008) ("courts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, *i.e.*, apparent on the face of the

14

(5:11cv839)

contract."(citing *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003)); *DeVries Dairy, LLC v. White Eagle Coop. Ass'n.*, 2011 WL 3349067, at *6 (N.D. Ohio July 29, 2011) ("Ohio's parol evidence rule prohibits extrinsic evidence from being used to 'alter, contradict, contest, or vary an integrated written agreement.'"); *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003) ("When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.").

### c. Whether AMLI Erroneously Applied the Exclusion to Plaintiffs

Having found that the Exclusion is not unlawful, the Court takes each Plaintiff's hospitalization claims in turn to consider whether AMLI erroneously applied the Exclusion to Plaintiffs.

### i. Scheonrock

Plaintiffs assert that AMLI was required to pay Scott Scheonrock for Lee Ann Scheonrock's hospitalizations that occurred from March 23, 2010 to April 18, 2010; and November 4, 2010 to January 8, 2011. ECF No. 112 at 7. The parties stipulate that Lee Ann Scheonrock became a "covered person" under the policy on February 1, 2010. ECF No. 85 at 7, ¶47. AMLI argues that it is not required to pay these claims because Lee Ann Scheonrock did not terminate coverage 63 days prior to the date she was covered under the policy, and these hospitalizations occurred within the 12-month exclusion period. ECF Nos. 95 at 24-26; 120 at 13. Plaintiffs do not dispute AMLI's assertion that Lee Ann Scheonrock did not terminate coverage 63 days prior to becoming a covered person under the AMLI Policy. Because the Exclusion is not unlawful for the reasons explained above, AMLI's non-payment to Scott

(5:11cv839)

Scheonrock for Lee Ann Scheonrock's hospitalization within the first year as a covered person did not breach the policy.

### ii. Tritola

Tritola became a covered person under the NCE Policy on December 1, 2009 and a covered person under the NACA Policy on January 1, 2011. ECF No. 85 at 9, ¶¶60, 61. Tritola's hospitalizations occurred from December 9, 2009 to December 31, 2009; and April 5, 2010 to April 25, 2010. ECF No. 85 at 9, ¶62. AMLI argues that it is not required to pay Tritola because he did not terminate coverage 63 days prior to the date he was covered under the NCE policy, and these hospitalizations occurred within the 12-month exclusion period. ECF Nos. 95 at 27; 120 at 13. Tritola was also hospitalized multiple times during 2011. ECF No. 85 at 9-11, ¶¶63, 64. AMLI argues it did not make payment to Tritola under the NACA Policy with respect to these claims, because the hospitalization occurred within the 12-month exclusion period. ECF No. 95 at 29. Plaintiffs do not dispute AMLI's assertion that Tritola did not terminate coverage 63 days prior to becoming a covered person under the AMLI Policies. Because the Exclusion is not unlawful for the reasons explained above, AMLI's non-payment to Tritola for hospitalization within the first year as a covered person did not breach the policies.

### iii. Berger

Berger became a covered person under the NACA Policy on December 15, 2010. ECF No. 85 at 12, ¶83. Berger's hospitalizations occurred on four separate occasions beginning in March 10, 2011, to December 7, 2011. ECF No. 85 at 12, ¶84. AMLI argues that it is not required to pay Berger because she did not terminate coverage 63 days prior to the date she was

16

(5:11cv839)

covered under the NACA policy, and these hospitalizations occurred within the 12-month exclusion period.  ECF Nos. 95 at 31-32; 120 at 13.  Plaintiffs do not dispute AMLI's assertion that Berger did not terminate coverage 63 days prior to becoming a covered person under the AMLI Policy.  Because the Exclusion is not unlawful for the reasons explained above, AMLI's non-payment to Berger for hospitalizations within the first year as a covered person did not breach the policy.[8]

### 2.  Late Payments to Palsa, Tritola and the Weilers

Plaintiffs argue that AMLI's late payments to Palsa, Tritola and the Weilers[9] constitute a breach of the policies which state that payment will be made to the insured within 60 or 30 days

---

[8]  AMLI also alleges that its non-payment to Berger and Scott Scheonrock did not breach the policy because Berger and the Scheonrocks did not perform their obligations under the policies in connection with the submission of their claims.  ECF No. 95 at 25-26, 20-31.  Specifically, AMLI alleges that the claims were sent to the wrong address and did not include charges incurred as required.  ECF No. 95 at 25, 31.  Plaintiffs assert that they substantially performed their obligations; AMLI in the past never required compliance with the claims submission provisions; AMLI advised Plaintiffs to submit claims not in accordance with its claim submission provisions; AMLI paid certain claims that were submitted in a like manner that did not comply with the provisions; and that, in any event, AMLI received all claims during litigation.  ECF No. 112 at 10, 12.  Because the Court finds that AMLI did not breach the policies by denying payment of these claims based on the Exclusion, it need not decide the substantial performance question.

[9]  It is not clear whether Plaintiffs also allege that AMLI breached the policy as to Scheonrock because of late payments.  ECF No. 96 at 17-20.  The record reflects that Scheonrock's claims within the first year of coverage were denied based upon the Exclusion, and that her other hospitalization claim for October–November 2011 was timely paid.  ECF No. 85 at 9, ¶57.  Because Plaintiffs agree that Scheonrock's October-November 2011 claim was paid, do not state that the payments were late, and do not assert that her other unpaid claims were improper other than the reasons discussed above, the Court does not consider Scheonrock's claims in the context of late payments.  *See, e.g.* ECF No. 112 at 7, 11-12.

(5:11cv839)

of receipt of the proof of loss.[10]  ECF No. 96 at 28-29, 36.  AMLI contends that the payments were late because Plaintiffs' forms indicated payment should be sent to Plaintiffs' hospitals rather than Plaintiffs, and that, in any event, AMLI has now made the payments plus interest to Plaintiffs.  ECF No. 95 at 21, 24, 27.  Therefore, AMLI argues, it cannot be said to have breached the contract nor can Plaintiffs show they suffered any damages, and AMLI is entitled to summary judgment.  ECF No. 95 at 20, 21.

Plaintiffs do not allege that they suffered damages, having now been paid in full with interest by AMLI.  Rather, Plaintiffs assert that irrespective of their lack of damages for the late-but-fully-paid claims, they are entitled to pursue nominal damages.  ECF No. 112 at 6.  Plaintiffs rely on *DeCastro v. Wellston City School Dist. Bd. of Educ.*, 761 N.E.2d 612 (Ohio 2002) and assert, without further explanation, that because they are also pursuing claims of bad faith and declaratory judgment that may result in a jury award of "substantial punitive damages and/or attorneys fees," they are entitled to pursue their breach of contract claims even if only nominal damages are available.  ECF No. 112 at 6.

In *DeCastro*, the Ohio Supreme Court allowed a discretionary appeal to determine the certified question, "whether nominal damages can be recovered where actual monetary damages

_____

[10]  Plaintiffs state that, under Ohio law, payment must be made within 30 days, and that the correct NCE Policy applicable to Plaintiffs states that payment be made within 30 days.  ECF No. 112 at 4.  Plaintiffs note that a different NCE Policy requiring payment within 60 was erroneously attached with the stipulation of facts.  ECF No. 112 at 4.  It is not clear whether Plaintiffs are asserting a breach of contract claim on this issue specifically or more generally, as applicable to their late payment claims.  In the absence of clear articulations by Plaintiffs to the contrary, and because AMLI agrees that the NCE Policy provides that payment will be made within 30 days (ECF No. 95 at 12), the Court does not decide the separate issue of whether payment is due within 30 days or 60 days.

18

(5:11cv839)

cannot be proven in a breach of contract claim." 761 N.E.2d at 615.  In *DeCastro*, a high school

senior was suspended for four days after he allegedly yelled and threw an egg at a replacement

teacher in the midst of a strike.  *Id*. at 614.  The student, DeCastro, sued the school board, the

superintendent and the principal.  *Id*.  DeCastro alleged two tort claims and a breach of contract

claim that his suspension violated the teachers' labor agreement, which provided that there were

to be no reprisals against any teachers, employees, parents, or students for any action related in

any way to the strike.  *Id*.  The defendants moved for summary judgment, arguing that DeCastro

failed to allege economic loss compensable in a breach of contract claim.  *Id.*

The trial court granted defendants' motion for summary judgment because DeCastro's

tort claims lacked merit and he failed to establish "any measurable item of damage that would be

compensable under a contract claim."  *Id.*  The court of appeals reversed, in a split decision,

relying upon the first paragraph in *First Nat'l Bank of Barnesville v. W. Union Tel. Co.*, 1876 WL

210 (Ohio 1876), which states that, "[i]n case of a breach of contract, actual damages not being

proved, nominal damages may be recoverable."  *De Castro*, 761 N.E.2d at 614.  The Ohio

Supreme Court granted a discretionary appeal in light of conflicts between Ohio appellate courts.

*Id*. at 614-15.

The Ohio Supreme Court reversed the court of appeals, "affirm[ing] the first paragraph of

the syllabus of *First Natl. Bank of Barnesville* only to the extent that we hold that in a case where

a plaintiff proves breach of contract at trial but fails to prove actual damages resulting from that

breach, the trial court may enter judgment for the plaintiff and award nominal damages."  *Id*. at

615.  The Court also provided that "unless a significant right is involved, including inequitable

19

(5:11cv839)

assessment of costs, an appellate court should not reverse and remand a case for a new trial if only nominal damages could result." *Id.* at 616.  Lastly, the Court held,

> summary judgment may be granted to the defendant in a breach-of-contract case where the plaintiff has failed to provide evidence of economic damages resulting from a breach of contract and has failed to seek injunctive relief or specific performance of a contractual duty, but instead rests his or her right to proceed to trial solely on a claim for nominal damages.

*Id.* at 617.

Plaintiffs in the instant case, like the plaintiff in *DeCastro*, do not assert that Palsa, Tritola and the Weilers suffered economic damages.  Plaintiffs, like the plaintiff in *DeCastro*, do not demand injunctive relief or specific performance.  Plaintiffs instead base their right to proceed with the breach of contract claims absent economic damages because they are also pursuing claims of bad faith and declaratory judgment.  ECF No. 112 at 6.  Plaintiffs provide no explanation as to how claims of bad faith and declaratory judgment provide a right to proceed with their breach of contract claims and make no attempt to align their theory pursuant to the rules established in *DeCastro*.  Without more, the Court will not enlarge the rules set out in *DeCastro* to adopt what would appear to be a new rule regarding the viability of a breach of contract claim for nominal damages.  Because Plaintiffs' breach of contract claims for late payments do not fall within the rules set forth in *DeCastro*, and Plaintiffs advance no other viable legal authority in support of their argument, summary judgment for AMLI is appropriate.  *See aslo Rizvi v. St. Elizabeth Hosp. Med. Ctr.*, 2003 WL 22998194, at * 5-6 (Ohio Ct. App. Dec. 16, 2003) (applying *DeCastro* to the facts presented and finding that because the plaintiff could not prove economic damages and did not seek injunctive relief or specific performance, summary

20

(5:11cv839)

judgment in favor of the defendants was appropriate).

### 3. Other Non-Payments

#### a. Tritola

Plaintiffs allege that AMLI breached the policy issued to NCE members by failing to pay Tritola benefits for all his 2011 hospitalizations. ECF Nos. 96 at 20-22; 112 at 13. It is undisputed that AMLI made payments in full plus interest for 30 of the days in 2011 during which Tritola was hospitalized. ECF No. 85 at 11-12, ¶¶ 80-81. It is also undisputed that the NCE Policy coverage provides for payment of hospitalization benefits of $1,000 per day up to 30 days per year. ECF No. 96 at 8, 12. Therefore, AMLI argues, it is not required to pay more than the amount paid to Tritola, which represents 30 days plus interest for the year 2011. ECF No. 95 at 28. In response, Plaintiffs cryptically assert that AMLI's "refusal to accept responsibility for any claim has kept all claims in play." ECF No. 112 at 14. Plaintiffs do not explain their argument, and contradictorily state elsewhere in their briefs that benefits are limited under the NCE Policy to $30,000 per policy year. ECF No. 96 at 18-19. Because AMLI paid Tritola $38,820.14, representing $30,000 at $1,000 per day plus interest accruing due to the lateness of the payment, AMLI did not breach the policy by refusing payment for days hospitalized over the 30-day limit expressed in the policy.

Plaintiffs also allege that AMLI insufficiently paid Tritola $5,000 rather than $6,000 for his 6-day hospitalization that occurred from December 1, 2011 to December 6, 2011. ECF No. 96 at 22. AMLI retorts that it calculates "days" based on a 24-hour period, not by calendar date, and that Tritola spent five 24-hour periods in the hospital between December 1, 2011 and December 6,

21

(5:11cv839)

2011, resulting in benefits totaling $5,000.[11]  ECF No. 120 at 16-17.  In support of its argument that "days" is calculated based on a 24-hour period, AMLI relies upon the language in the NCE Policy, which states,  "[w]hen making a benefit determination under this Policy, [AMLI] has discretionary authority to determine the Covered Person's eligibility for the benefits and to interpret the terms and provision of the Policy."  ECF Nos. 120 at 16; 85-1 at 4.  Additionally, AMLI submits an affidavit by Medina Jett, executive vice president and general counsel of AMLI, dated March 4, 2013, wherein Jett states that AMLI calculates "days" based on a 24-hour period. ECF Nos. 120 at 16; 120-2 at 2, ¶¶1, 3.

Plaintiffs did not have an opportunity to respond to AMLI's "24-hour period" argument because AMLI embraced the "24-hour period" theory in the final of the six briefs filed by the parties, despite having been on notice earlier that Plaintiffs were alleging the $5,000 payment was deficient.  *See* ECF No. 96 at 22.  The Court was not presented with sufficient briefing on this issue nor evidence of the time Tritola was released from the hospital on December 6, 2011. Summary judgment in favor of either party is, therefore, unwarranted.

### b.  Palsa

Plaintiffs allege that AMLI failed to pay Palsa for an emergency room visit.  ECF No. 96 at 17.  Palsa was admitted to the emergency room on October 9-10, 2010, and had x-rays taken. ECF No. 96 at 13.  AMLI denied payment for the visit and argues that the policy does not cover emergency room visits.  ECF No. 114 at 8.  The NCE Policy states that hospital confinement

---

[11]  Tritola was hospitalized from November 1, 2011 to December 6, 2011.  ECF No. 85 at 11, ¶¶63, 64.  Because the Exclusion applied until December 1, 2011, the dates at issue are December 1 through December 6.

22

(5:11cv839)

claims will not be paid for "emergency room treatment." ECF No. 85-2 at 8.  Plaintiffs do not

respond to AMLI's argument that it properly denied payment to Palsa on her emergency room

claim.  Because the policy clearly states that it will not cover emergency room treatment, AMLI

did not breach the policy by refusing to pay Palsa benefits for her emergency room visit.

It is undisputed that AMLI paid the hospital for the x-rays that were taken during that visit.

ECF No. 85 at 5, ¶24.  Plaintiffs allege that payment to the hospital for the x-rays was improper.

ECF No. 112 at 3.  AMLI asserts that it properly paid the hospital $76.15 for Palsa's x-ray

because Palsa's UB-04 form allegedly assigned benefits to the hospital.[12]  ECF No. 95 at 14.

Unlike the other benefits that were allegedly erroneously first paid to hospitals then paid to

Plaintiffs, Palsa appears to have never been paid for the x-rays.  Neither party provides sufficient

explanation to the Court as to whether Palsa should have been paid for the x-ray claim directly, or

whether the x-ray claim and the emergency room visit claim are considered two distinct claims.[13]

---

[12]  A UB-04 form is used by providers in billing multiple third party payers.  ECF No. 112 at 5; *see also* http://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/ub04_fact_sheet.pdf.

[13]  The record reflects inconsistencies in how the parties refer to the x-ray claim.  The parties stipulate that the x-ray claim was paid to Palsa's hospital on February 9, 2011.  ECF No. 85 at 5, ¶24.  Plaintiffs at one point state, [o]n February 4, 2011, AMLIC responded that it had fulfilled its obligations to pay Palsa's Hospital Confinement claims under the NCE Policy by paying Palsa's medical care providers.  AMLIC also denied Palsa's October 9-10, 2010 emergency room visit . . ."  ECF No. 96 at 16.  Plaintiffs then state that "on February 9, 2011, AMLIC's claims administrator paid Palsa's medical care provider for the October 9-10, 2010 emergency room visit *and* X-ray."  ECF No. 96 at 16 (emphasis added).  Thus, it is not clear whether Plaintiffs are saying "emergency room visit" to mean the x-ray claim as well, indicating the emergency room visit and x-ray are one claim, or if these are two separate claims under the policy.  For example, Plaintiffs later state that AMLI paid the hospital for Palsa's "emergency room and x-ray claims," when it appears as though AMLI only paid an x-ray claim, and not an

23

(5:11cv839)

Therefore, summary judgment is denied to both parties as to whether the failure to pay Palsa directly on her x-ray claim constituted breach of the policy.

Plaintiffs also assert that Palsa was not paid for claims submitted to AMLI for doctor visits.  Though Plaintiffs asserted in their opening motion brief that these claims were not yet "ripe for summary judgment," they later state in their reply brief that Palsa "now supplements her previous production of documents to include the doctor visit claims she previously submitted" to AMLI.  ECF Nos. 96 at 28; 115 at 3.  Plaintiffs attach copies of what appear to be Palsa's records of doctor visits.  ECF No. 115-1.  AMLI asserts that "Palsa has never submitted to AMLI Proof of Loss for these visits," and that while Palsa "believes that she submitted" the claims to AMLI, AMLI maintains that it never received these claims.  ECF No. 95 at 22.  AMLI also objects that the supplemented medical records filed in reply were not produced during discovery, and in any event do not demonstrate that Palsa ever submitted the doctor visit claims to AMLI.  ECF No. 120 at 6-7.

Palsa testified in her deposition that she does not recall exactly what form she submitted to AMLI, does not remember how the form was submitted, what else may have been submitted, whether AMLI communicated with her about the claims, or even whether the claims had been paid.  ECF No. 87 at 31-33.  Producing copies of Palsa's doctor visit records does not establish that Palsa submitted these doctor visit claims to AMLI.  Because Plaintiffs assert that the claims were submitted but unpaid while AMLI maintains that the claims were never received, a genuine issue of material fact exits as to whether Palsa submitted doctor visit claims and AMLI failed to

emergency room visit claim.  ECF No. 112 at 3.

24

(5:11cv839)

pay them, precluding summary judgment.

### B. Bad Faith

"[A]n insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action against the insurer." *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1319 (Ohio 1983). Delayed payments also may constitute bad faith. *See Unklesbay v. Fenwick*, 855 N.E.2d 516, 521 (Ohio Ct.App. 2006) ("the insurer's foot-dragging in the claims-handling and evaluation process could support a bad-faith cause of action"); *Jay v. Massachusetts Casualty Ins. Co.*, 2008 WL 555440, at *12 (Ohio Ct. App. Feb. 27, 2008).

To successfully assert a bad faith claim, a plaintiff must show that the defendants "failed to exercise good faith in refusing to pay the claim, by showing that such refusal was based upon circumstances that did not 'furnish reasonable justification therefor.'" *Maxey v. State Farm Fire Ins. & Cas. Co.*, 689 F. Supp. 2d 946, 953 (S.D. Ohio 2010) (quoting *Hart v. Republic Mut. Ins. Co.*, 87 N.E.2d 347, 349 (Ohio 1949)); *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399-400 (Ohio 1994). The inquiry under this standard is "whether 'the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial,' not whether the insurance company's decision to deny benefits was correct." *Rauh Rubber, Inc. v. Berkshire Life Ins. Co.*, 1999 WL 1253062, at *2 (6th Cir. Dec.16, 1999) (quoting *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992)). "[W]here a claim is fairly debatable the insurer is entitled to refuse the claim as long as such refusal is premised on a genuine dispute over either the status of the law at the time of the denial or the facts giving rise to the claim." *Marsteller v. Security of*

(5:11cv839)

*Am. Life Ins. Co.*, 2002 WL 31086111 , at *5 (N.D.Ohio Sept. 12, 2002) (quoting *Motorists Mut. Ins. Co. v. Said*, 590 N.E.2d 1228, 1236 (Ohio 1992). "'Fairly debatable' or 'arbitrary and capricious' are merely different ways of explaining and expressing the standard of 'reasonable justification.'" *Corbo Prop., Ltd v. Seneca Ins. Co., Inc.*, 771 F.Supp.2d 877, 880 (N.D.Ohio 2011).

To grant summary judgment to a plaintiff on a bad faith claim, a court "must find that [p]laintiff adduced sufficient evidence showing that, as a matter of law, [d]efendants did not have a reasonable justification for their denial." *Maxey*, 689 F.Supp.2d at 953 (citing *Zoppo*, 644 N.E.2d at 400).[14]

In the instant case, Plaintiffs allege that AMLI's refusal of certain payments; payments made to the hospitals instead of payment directly to Plaintiffs; and AMLI's late payments to certain Plaintiffs were made in bad faith.[15] ECF Nos. 96 at 36; 115 at 9-10.  AMLI argues that it had a reasonable justification for denying certain payments, making payments to the hospitals and sending out late payments.  ECF No. 114 at 18-20.

---

[14]  Ohio Administrative Code Rules do not create a private right of action, and, despite Plaintiffs' assertion to the contrary, nor do violations amount to a *per se* breach of the duty of good faith.  ECF No. 96 at 35.  *See Furr v. State Farm Mut. Auto Ins. Co.*, 716 N.E.2d 250, 257 (Ohio Ct. App. 1998); *Retail Ventures, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 2007 WL 943011, at * 3 (S.D.Ohio March 27, 2007) (alleged violations of Ohio statutes and code provisions are "immaterial" to a plaintiff's bad faith claims).

[15]  Plaintiffs do not articulate their individual bad faith claims, instead alleging AMLI's actions constituted bad faith generally and listing a myriad of generalized complaints about AMLI's handling of claims as well as other alleged activities by AMLI not at issue in the case at bar. *See e.g.* ECF No. 96 at 36.  The Court will consider Plaintiffs' cognizable bad faith claims it purports to set out regarding denied payments, payment to third parties and late payments.  ECF No. 115 at 9.

(5:11cv839)

### 1.  The Exclusion

To the extent Plaintiffs allege that AMLI's failure to pay certain claims of Scheonrock, Tritola and Berger was done in bad faith (ECF No. 96 at 35), AMLI asserts that it was reasonably justified in denying payment pursuant to the Exclusion.  ECF No. 114 at 21.  Plaintiffs have not shown that AMLI lacked reasonable justification for denying payments based upon the Exclusion, precluding summary judgment.

### 2.  Payments to Hospitals

It is undisputed that AMLI initially paid the claims submitted by Palsa and Tritola to the hospitals rather than Palsa and Tritola directly.  ECF No. 85 at 4-5 ¶¶19, 21, 24; at 10-11, ¶¶70, 74.  Plaintiffs argue that AMLI should have paid Palsa and Tritola directly, and had no reasonable justification for paying the hospitals instead.  ECF No. 96 at 16.  In support of their argument, Plaintiffs assert that the policy certificates "promis[e] to pay benefits directly to the insured." ECF No. 96 at 12.  A review of the record reveals that the NCE Certificate of Coverage states that "[b]enefits will be paid to the Named Insured or to the designated beneficiary on record."[16]  ECF No. 85-2 at 15.

AMLI contends that it paid Palsa's and Tritola's benefits to the hospitals because Palsa's and Tritola's UB-04 forms assigned benefits to the hospitals.  ECF Nos. 95 at 21-22, 28; 120 at 6. Plaintiffs retort that AMLI bases this argument on the affidavit of Medina Jett filed in support of

---

[16]  Plaintiffs cite to their own brief as evidence of the policy language; which in turn cites to the stipulation of facts; which in turn cites to various policies and certificates with no further page citations.  ECF No. 112 at 3.  Despite Plaintiffs' Hansel and Gretel approach to record citation, the Court has done its best to independently locate the purportedly relevant documents.

27

(5:11cv839)

AMLI's summary judgment motion, dated after Jett's deposition testimony.  ECF No. 112 at 5.

Plaintiffs argue that Jett's affidavit conflicts Jett's prior testimony and also the testimony of

former AMLI CEO Mike Murphy, AMLI's Rule 30(b)(6) deponent and, therefore, the Court

should disregard Jett's affidavit.  ECF No. 115 at 2.  AMLI does not respond to Plaintiffs'

argument.

### a. Whether Jett's Affidavit Conflicts With Earlier Deposition Testimony

It is settled law in the Sixth Circuit that "a party cannot create a genuine issue of material

fact by filing an affidavit, after a motion for summary judgment has been made, that essentially

contradicts his earlier deposition testimony." *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899,

906 (6th Cir. 2006) (quoting *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir.1997)).

A directly contradictory affidavit should be disregarded, and if there is no direct contradiction, a

court may consider an affidavit that appears to contradict prior testimony "so long as the affidavit

is not intended to create a sham issue of fact." *Aerel, S.L.R.*, 448 F.3d at 908 (citing *Miller v. A.H.*

*Robins Co., Inc.*, 766 F.2d 1102, 1104 (7th Cir. 1985); *Franks v. Nimmo*, 796 F.2d 1230, 1237

(10th Cir. 1986)).  To determine whether there is a sham issue of fact, a court considers many

factors including "whether the affiant had access to the pertinent evidence at the time of his earlier

testimony or whether the affidavit was based on newly discovered evidence, and whether the

earlier testimony reflects confusion [that] the affidavit attempts to explain." *Aerel, S.R.L.*, 448

F.3d at 909 (quoting *Franks*, 796 F.2d at 1237).

In her deposition, when asked why Palsa's and the Weilers' claims were not timely paid,

Jett responds, "I don't know. . . . I don't even know that they weren't timely paid.  I don't get

28

(5:11cv839)

those details." ECF No. 82 at 13.  When asked to whom benefits should be paid, Jett responds,

"[i]f we are in good faith looking at a document that purports to assign the benefits to the hospital,

then we were so obligated to pay the hospital, because that's what the member agreed to prior to

the hospital providing the service." ECF No. 81 at 42.  Jett's later affidavit states that Palsa

assigned benefits to the hospital in her UB-04 forms, and the affidavit is supplemented by Palsa's

three UB-04 forms. ECF No. 95-1 at 3, ¶10.

      Jett's affidavit does not directly conflict her deposition testimony.  In her deposition, Jett

states that an insured may assign benefits to a hospital, and in her affidavit Jett states that Palsa

submitted a UB-04 form that purported to assign benefits to the hospital.  This is not

contradictory.  Moreover, Jett's answer to the question why Palsa's and the Weilers' claims were

untimely paid does not contradict what Jett later averred in her affidavit.  The Weilers' claims

were not paid to the hospital, and it is not clear the question asked in the deposition specifically

addresses this point of payment to a hospital.  ECF No. 82 at 13.  Additionally, Jett stated in her

deposition that she did not know why Palsa's claims were paid late.  Thus, Jett's affidavit

provides further documentation that is submitted to supplement a question when the affiant did

not have access to the pertinent evidence at the time, and is not grounds for disregarding the later

affidavit.  *See Aerel, S.R.L.*, 448 F.3d at 909.

      The Court also finds that Jett's affidavit does not contradict ALMI's Rule 30(b)(6)

deponent, Mike Murphy, as Plaintiffs allege.  ECF No. 115 at 2-3.  Despite Plaintiffs' allegation

that Murphy "acknowledged that Palsa's claims *never* should have been paid to her medical care

providers," Murphy does not make such a statement.  ECF No. 115 at 3.  Rather, Murphy states

(5:11cv839)

that, assuming that Palsa told AMLI on August 5, 2010 that her benefits should be paid directly to

her, "what [Palsa] was told here [by AMLI] is not correct.  You don't need— it doesn't have to be

paid to the provider."  ECF No. 83 at 256.  Murphy also states that a medical care provider may

stipulate that an assignment of benefits had been made.  ECF No. 83 at 162.  Thus, Jett's affidavit

in which she avers that Palsa's UB-04 forms purported to assign benefits to the hospital does not

conflict with Murphy's deposition testimony.

### b. Palsa

AMLI argues that, in the case of Palsa, it paid benefits to the hospital because Palsa's UB-

04 forms indicated that Palsa assigned benefits to the hospital.  ECF Nos. 95 at 14; 87-7 at 1.

Plaintiffs retort that the definition of "beneficiary" is "a person entitled to take proceeds on death

of the insured" and does not include a hospital, and that the policy governs who receives the

benefits.  ECF No. 112 at 4.  Plaintiffs also assert that during communication with AMLI on

August 5, 2010, "[w]hen asked whether payment should be made to Palsa directly or to her

medical care provider, Palsa expressly direct[ed] AMLIC's claims administrator to make payment

to herself," but that AMLI refused Palsa's request for payment to herself rather than the hospital.

ECF Nos. 96 at 14-15; 96-1 at 3.  Plaintiffs point to deposition testimony evidence of Mike

Murphy, wherein Murphy stated that it was an error that the claims were paid to the hospital after

Palsa communicated to AMLI to pay the benefits directly to her.  ECF No. 83 at 256.  AMLI does

not dispute this.

Plaintiffs also point to Palsa's three submitted UB-04 forms and note that on the first UB-

04 form, the March 2010 form, "AETNA" is listed as the primary payer and is shown as owing

30

(5:11cv839)

the full amount of the bill ($87,406.85)— AMLI is listed as the secondary payer and is shown as

owing $0.00.  ECF Nos. 112 at 5; 95-1 at 6.  Moreover, Plaintiffs note, AMLI is not listed as an

insurer responsible for payment, or indeed anywhere, on the other two forms, dated August 2010

and October 2010.  ECF Nos. 112 at 5; 95-1 at 7,8.  Therefore, Plaintiffs argue, no reasonable

person could view the UB-04 forms and conclude that AMLI was being asked to pay the hospital.

ECF No. 112 at 5.  AMLI, in response, continues to state that it had a reasonable justification for

paying the hospital because of the UB-04 forms.

### i.  March 2010 UB-04 Form

The record reflects that Palsa's first UB-04 form, dated March 15, 2010, lists AMLI as

secondary insurer.  ECF No. 95-1 at 6.  Appearing in the box designated as the assignment of

benefits is a Y (*i.e.* yes), which, according to AMLI, represents an assignment of benefits to the

hospital.  ECF Nos. 95 at 21; 95-1 at 6.  Despite the form also indicating AMLI owed $0.00, the

Court cannot conclude, as a matter of law, that AMLI was unjustified in paying Palsa' March

2010 claim directly to the hospital, and that a genuine issue of material fact exists as to whether

the UB-04 form provided AMLI with reasonable justification for paying benefits to Palsa's

hospital.

### ii.  August and October 2010 UB-04 Forms

The record also reflects that Palsa communicated to AMLI on August 5, 2010, that policy

benefits were to be paid to her directly.  ECF No. 96-1 at 3.  AMLI's corporate representative

testified in a deposition that after this communication, the benefits should have been paid to Palsa

directly.  ECF No. 83 at 256.  The record also reflects that, after the August 5, 2010

31

(5:11cv839)

communication, Palsa submitted two more claims and attendant UB-04 forms, neither of which listed AMLI as an insurer.  ECF No. 95-1 at 7, 8.  Therefore, AMLI's assertion that it reasonably relied on the designation of benefits box on the UB-04 forms dated August 10, 2010 and October 9, 2010 is unavailing, because the UB-04 forms for those claims did not purport to designate benefit payments for AMLI, and Palsa had previously communicated to AMLI separately that the payments were to be made to her.  ECF No. 95-1 at 7,8; 95-1 at 3, ¶12; 95-1 at 4, ¶14.

Thus, the Court finds that Plaintiffs have shown that Palsa's August-September 2010 claims and October 9-10, 2010 claims were unreasonably and unjustifiably paid to the hospital, and that no reasonable person could conclude otherwise.  Plaintiffs point to the clear policy language stating that benefits will be paid to the insured or the designated beneficiary; UB-04 forms that do not denote assignment of benefits for AMLI payments; two prior communications by Palsa to AMLI stating that benefits should be paid to Palsa (ECF No. 96 at 14); the former CEO's deposition testimony that the benefits should have been paid to Palsa after she communicated to AMLI on August 5, 2010, that she should receive payments directly; and a complete absence on the part of AMLI to question or investigate Palsa's claims.  *C.f. Maxey*, 689 F.Supp.2d, at 953-54 (denying summary judgment to plaintiff because the record did not "support a finding that [d]efendants, as a matter of law, conducted such an inadequate investigation that they did not have reasonable justification for their denial" of the plaintiff's claims, noting that the defendants conducted an investigation by employing multiple investigating experts and outside counsel for recommendations regarding the claims); *Werner v. Progressive Preferred Ins. Co.*, 2009 WL 331530, at *4 (6th Cir. Feb. 12, 2009) (insurer was justified in paying a claim to a

(5:11cv839)

lienholder, rather than plaintiff, when insurer received documentation of the lien, repeatedly asked

for additional information from plaintiff regarding his claim and, when not forthcoming, followed

company policy in paying the lienholder).

### c.  Tritola

As to Tritola's claims, Plaintiffs submit undisputed evidence that these claims were paid to

Tritola's hospital in April 2011.  ECF No. 85 at 10, ¶70.  Plaintiffs point out that this occurred

after Palsa had filed the instant action alleging benefits wrongfully paid to the hospital.  ECF Nos.

112 at 14; 1-1 at 7.  Tritola joined as a Plaintiff in July 2011, alleging improper payment to his

hospital, yet AMLI thereafter paid another claim to Tritola's hospital, in September 2011.  ECF

Nos. 14; 85 at 11, ¶74; 96 at 21.  Despite AMLI undoing the payment to Palsa's hospital in

August 2011, AMLI did not directly pay Tritola until January 7, 2013, almost two years after the

claim was submitted.  ECF No. 85 at 5, ¶29; at 11, ¶80.  During that time, AMLI was aware

Tritola was seeking payment directly.  ECF Nos. 82 at 11; 85 at 5, ¶29; at 11, ¶80.  Although

AMLI asserts that it believed Tritola had assigned his benefits to his hospital, AMLI offers no

explanation as to why it believed Tritola had assigned benefits to his hospital and offers no

argument to support its purported justification.  ECF No. 114 at 20.  The Court finds that

Plaintiffs have shown that AMLI's actions in paying claims to Tritola's hospital were arbitrary

and capricious, and therefore unjustified as a matter of law.

### d.  Whether AMLI Acted In Bad Faith When It Waited For Reimbursement From the Hospitals Before Paying Palsa and Tritola

Plaintiffs additionally assert that AMLI acted in bad faith because it waited until it had

33

(5:11cv839)

been reimbursed by the hospitals before paying Palsa and Tritola directly for their claims. ECF No. 115 at 3, 8, 9. Plaintiffs cite to Murphy's deposition testimony wherein he states that if the hospital had been paid in error, the insured would not have to wait until AMLI retrieved payment from the hospital before being paid. ECF No. 83 at 162. Plaintiffs also point to Jett's deposition testimony wherein she states that Plaintiffs would have to wait until AMLI was reimbursed before receiving payment on the claims. ECF No. 82 at 30. AMLI does not respond to this argument. The Court finds that there is not sufficient evidence to determine as a matter of law that AMLI's actions constitute bad faith. Thus, a genuine issue of material fact exists as to whether awaiting reimbursement before paying Plaintiffs' claims is a reasonable justification for further delaying payments to Plaintiffs.

### 3. Late Payments To the Weilers

Plaintiffs allege AMLI's late payments to the Weilers constitute bad faith. ECF No. 96 at 36. It is undisputed that in or around January or February 2011, Kevin Weiler properly submitted to AMLI and AMLI received proof of loss for Jacqueline Weiler's hospitalization. ECF No. 85 at 6, ¶38. In or around February or March 2011, Colleen Weiler properly submitted to AMLI and AMLI received proof of loss for her hospitalization. ECF No. 85 at 7, ¶43. Plaintiffs allege that, despite receiving the claims, AMLI never acknowledged the claims. ECF No. 96 at 23. The Weilers thereafter joined in the instant action as Plaintiffs, alleging non-payment of benefits. ECF No. 85 at 5, ¶27. AMLI, in its Answer to the First Amended Complaint, admitted that it had not communicated with anyone about the Weilers' claims and denied that it had failed to comply with any duties owed to the Weilers. ECF No. 16 at 10, ¶43; at 11, ¶50. Two weeks later, AMLI paid

(5:11cv839)

the Weilers' claims plus interest.  ECF Nos. 85 at 7, ¶44; 96 at 24.

AMLI asserts that it was reasonably justified in not paying the Weilers' claims because in or around November 2010 "the computer servers upon which HGI stored various claims-related documents failed."[17]  ECF No. 114 at 18.  AMLI argues that the Weilers' claims were affected by the computer failure, and that when AMLI learned of the failure, in or around July 2011, it processed the claims as quickly as possible.  ECF No. 114 at 18.  Plaintiffs retort that the computer failure did not disrupt actual claims, but supporting documents— therefore, Plaintiffs argue, there was no reason for AMLI not to enter the new claims and correspond with the Weilers about the need for supporting documentation.  ECF No. 82 at 30-31.  Plaintiffs also assert that the failure to manage its computer systems does not exonerate AMLI, particularly because it allegedly took AMLI eight months to discover that the computer server failed.  ECF No. 115 at 4.  Furthermore, Plaintiffs note, despite AMLI's discovery of the computer failure, AMLI continued to deny that it owed payment on the Weilers' claims.  ECF No. 115 at 4-5.

The Court finds that Plaintiffs have established that AMLI lacked reasonable justification for the delayed payment of the Weilers' claims.  The record reflects that the computer failure did not prevent claims from being submitted, and that AMLI acknowledges that it received the Weilers' claims.  ECF No. 82 at 31.  AMLI's argument that it was justified in not processing the Weilers' claims because, due to the computer failure, it lacked the "claims information necessary to process those claims," is unpersuasive.  ECF No. 114 at 18.  At no time did AMLI contact the

---

[17]  HGI is Hammerman & Gainer, a third-party administrator services company AMLI contracted with to process claims.  ECF No. 83 at 26.

35

(5:11cv839)

Weilers regarding supporting documentation and, despite numerous notifications that the Weilers'

claims had not been processed, AMLI did not investigate those claims and continued to deny

liability.  *See Jay,* 2008 WL 555440, at *13 (plaintiff presented evidence challenging the manner

in which the claim was handled and the insurer's basis for repeatedly denying the claim); *c.f.*

*Price v. Dillon,* 2008 WL 698944, at *5 (Ohio Ct. App. March 13, 2008) ("A seven-month delay

in paying an insurance claim, without more, is not evidence of bad faith"); *Soriano v. State Farm*

*Fire and Cas. Co.,* 2008 WL 2079409, at * 5 (N.D.Ohio May 15, 2008) (two month delay was not

bad faith when insurer was actively negotiating with building contractor on repair costs); *Garrett*

*v. Ohio Farmers Ins. Co.,* 2005 WL 280831, at *3 (Ohio Ct. App. Feb. 4, 2005) (after receiving

incomplete forms by the insured, the insurer made "ongoing attempts to retrieve a second

authorization and several requests for medical and wage verification information.").  Because

Plaintiffs adduce sufficient evidence showing that, as a matter of law, AMLI did not have a

reasonable justification for delaying payment of the Weilers' claims, summary judgment is

warranted.[18]  *See Maxey,* 689 F.Supp.2d at 953.

### 4. Alleged Underpayment of Tritola's Claim

Plaintiffs allege that AMLI underpaid Tritola's December 1, 2011-December 6, 2011

claim because it paid $5,000 to Tritola instead of $6,000.  ECF No. 96 at 22.  AMLI argues that it

---

[18]  The Court notes that Plaintiffs lament the handling of additional claims of the Weilers' that do not appear in the complaint and pre-date the Weilers' claims articulated in the complaint. ECF No. 96 at 24-25.  The purpose for which Plaintiffs bring these new allegations to the Court's attention, including whether Plaintiffs are attempting to seek judgment on these claims, is not revealed.  The Court, therefore, does not consider these new claims/allegations and, instead, only considers Plaintiffs' claims that were set forth in the Second Amended Complaint and fully briefed.

(5:11cv839)

calculates "days" based on a 24-hour period, not by calendar date, and that Tritola spent five 24-hour periods in the hospital between December 1, 2011 and December 6, 2011, resulting in benefits totaling $5,000.  ECF No. 120 at 16-17.  As with the breach of contract claim, the Court finds there is a genuine issue of material fact as to whether AMLI calculates "days" based on a 24-hour period, whether the calculation was correctly applied to Tritola, and whether reliance upon the 24-hour day theory is justifiable, precluding summary judgment.

### C. Declaratory Judgment

In addition to partial summary judgment, Plaintiffs "seek a declaration of the rights and responsibilities of themselves and AMLIC under certain hospital indemnity policies issued by AMLIC to Plaintiffs (Count II of the Second Amended Complaint (Doc. 47))."  ECF No. 96 at 1. Count II of the Second Amended Complaint reads,

> 100.  An actual, real and substantial controversy exists between the parties as to whether the Plaintiffs' AMLIC Policies provide coverage for each individual Plaintiff's claims requiring judicial declaration setting forth the respective rights and obligations of the parties under such policies.
>
> 101.  An actual, real and substantial controversy exists between the parties as to whether AMLIC's claims handling practices and procedures comport with the requirements of good faith and fair dealing required by Ohio law requiring judicial declaration of whether those claims handling practices and procedures must be changed in order to comport with Ohio law with respect to future handling of such claims.

ECF No. 47 at 24-25.  Plaintiffs make no further mention of declaratory judgment in their briefs. AMLI, beyond asserting that Plaintiffs are not entitled to declaratory judgment, does not fully respond to Plaintiffs' declaratory judgment claim.

The Declaratory Judgment Act states that "in a case of actual controversy within its

37

(5:11cv839)

jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

of any interested party seeking such declaration." 28 U.S.C. § 2201.  "The Supreme Court has

repeatedly emphasized the discretionary nature of the Act." *Almendares v. Palmer*, 284

F.Supp.2d 799, 810 (N.D.Ohio 2003) (citing *Green v. Mansour*, 474 U.S. 64, 72 (1985) (the

statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right

upon the litigant.") (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952))).

The Sixth Circuit applies two principal criteria in order to determine whether to grant

declaratory relief: "(1) when the judgment will serve a useful purpose in clarifying and settling the

legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty,

insecurity, and controversy giving rise to the proceeding." *Grand Trunk. W. Railroad Co. v.*

*Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir.1984).  The Sixth Circuit also considers the

following factors:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the
> legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of
> "procedural fencing" or "to provide an arena for a race for res judicata;"
> (4) whether the use of a declaratory action would increase friction between our
> federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Grand Trunk*, 476 F.2d

at 326).

As noted, the parties do not address these factors in their briefs.  To the extent Plaintiffs'

seek declaratory judgment regarding whether AMLI's claims handling practices and procedures

must be changed in order to comport with Ohio law, Plaintiffs' claim must fail.  Plaintiffs point to

38

(5:11cv839)

numerous provisions of the Ohio Administrative Code that AMLI allegedly violated— however, as noted, those provisions do not provide a private right of action.  ECF No. 47 at 25-26 (listing R.C. § 3905.14(B)(9); OAC § 3901-1-07(C)); *See Furr*, 716 N.E.2d at 257.  Because none of these provisions create a private right of action, a declaratory action is unavailing as well.  *See Almendares v. Palmer*, 284 F.Supp.2d 799, 810 (N.D.Ohio 2003) (Declaratory Judgment Act does not create substantive rights, but a procedure for adjudicating existing rights, thus the plaintiff's declaratory judgment action failed because the Ohio food stamp regulations do not create a private right of action).

Furthermore, without articulation from Plaintiffs as to what they seek the Court to declare, the Court declines to guess upon which claims Plaintiffs seek declaratory judgment, and will not award declaratory judgment as to all Plaintiffs on all claims when no factual or legal argument has been advanced in support of asking the Court to do so.  Plaintiffs' motion for declaratory judgment is therefore denied.

### IV.  Conclusion

For the reasons stated above, the Court, regarding Plaintiffs' breach of contract claims:

- DENIES summary judgment to Plaintiffs on the issue of the Exclusion; GRANTS summary judgment to AMLI on the same issue;

- DENIES summary judgment to Plaintiffs on the issue of late payments to Palsa, Tritola and the Weilers; GRANTS summary judgment to AMLI on the same issue;

- DENIES summary judgment to Plaintiffs on the issue of Tritola's 2011 claims beyond the 30-day-per-year policy limit; GRANTS summary judgment to AMLI on the same issue;

(5:11cv839)

- DENIES summary judgment to Plaintiffs on the issue of Tritola's December 1, 2011–December 6, 2011 payment; DENIES summary judgment to AMLI on the same issue;

- DENIES summary judgment to Plaintiffs on the issue of Palsa's emergency room visit; GRANTS summary judgment to AMLI on the same issue;

- DENIES summary judgment to Plaintiffs on the issue of Palsa's x-ray claim; DENIES summary judgment to AMLI on the same issue;

- DENIES summary judgment to Plaintiffs on the issue of Palsa's doctor visit claim; DENIES summary judgment to AMLI on the same issue.

Regarding Plaintiffs' bad faith claims, the Court:

- DENIES summary judgment to Plaintiffs on the issue of Scheonrock, Tritola and Berger claims denied by AMLI pursuant to the Exclusion;

- DENIES summary judgment to Plaintiffs on the issue of Palsa's March 15, 2010–April 8, 2010 claim paid to the hospital;

- GRANTS summary judgment to Plaintiffs on the issue of Palsa's August 10, 2010–September 1, 2010 claim and October 2010 claim paid to the hospital;

- GRANTS summary judgment to Plaintiffs on the issue of Tritola's January 18, 2011-February 15, 2011 and June 28, 2011–July 21, 2011 claims paid to the hospital;

- DENIES summary judgment to Plaintiffs on the issue of timeliness of payments pending reimbursement;

- GRANTS summary judgment to Plaintiffs on the issue of late payments to the Weilers;

- DENIES summary judgment to Plaintiffs on the issue of underpayment of Tritola's

40

(5:11cv839)

December 1, 2011– December 6, 2011 claim.

The Court DENIES Plaintiffs' motion for declaratory judgment.

Accordingly, the case will proceed on 1) Tritola's breach of contract and bad faith claims regarding payment of his December 1, 2011 to December 6, 2011 hospitalization claim; 2) Palsa's breach of contract claim regarding x-ray and doctor visit hospitalization claims; 3)  Palsa's bad faith claim regarding her March 15, 2010-April 8, 2010 hospitalization claim paid to the hospital; 4) Palsa's and Tritola's bad faith claims regarding whether AMLI was justified in seeking reimbursement from the hospitals before paying benefits to Palsa and Tritola; 5) Plaintiffs' bad faith claim regarding denial based upon the Exclusion; and 6) the issue of damages.


     IT IS SO ORDERED.


 June 28, 2013                     _/s/ Benita Y. Pearson_            
Date                                    Benita Y. Pearson
                                        United States District Judge

41